IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL SNIDER,** | : | **CIVIL NO. 1:CV-10-01667** |
| Petitioner | : | **(Judge Rambo)** |
| v. | : | |
| **WILLIAM SCISM,** | : | |
| Respondent | : | |

# **M E M O R A N D U M**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Daniel Snider ("Snider"), an inmate confined at the Allenwood Low Security Institution ("LSCI-Allenwood") in White Deer, Pennsylvania.  Snider alleges that his constitutional rights were violated in the context of a disciplinary proceeding.  For the reasons that follow, the petition will be denied.

## **I.    Facts**

On October 6, 2009, at approximately 6:30 p.m., LSCI-Allenwood staff ordered Snider to provide a urine sample.  (Doc. 7-2 at 16.)  At approximately 6:40 p.m., Snider was told he had two hours to provide the urine sample and that if he failed to provide the sample within those two hours, he would be issued an incident report for failing to provide a urine sample.  (*Id*.)  Snider responded that he understood, but had problems in the past with providing urine samples.  (*Id*.)  As a result, Snider was

offered and accepted water to drink during the two-hour testing period. (*Id*.) At 8:40 p.m., Snider had failed to provide a urine sample. (*Id*.) At that point he was given an additional thirty minutes to provide the sample. (*Id*.) At 9:10 p.m., Snider still had not provided the sample. (*Id*.)

As a result of his failure to provide a urine sample, Snider was issued an incident report charging him with Refusing to Provide a Urine Sample or Take Part in Other Drug-Abuse Testing in violation of Section 110 of the Bureau of Prisons' ("BOP") disciplinary code. (*Id*.) The incident report was delivered to Snider at 8:17 a.m. on October 7, 2009. (*Id*.) An investigation was conducted on that same date. (*Id*. at 17.) The investigating officer, Lieutenant L. Engel, advised Snider of his rights, and Snider stated, "Yes, I understand my rights." (*Id*.) Snider also made a statement at that time: "I have a problem urinating." (*Id*.) The officer noted that Snider maintained a fair attitude during the interview. (*Id*.) After completing his investigation, Lieutenant Engel referred the incident report to the Unit Disciplinary Committee ("UDC") for further action. (*Id*. at 16-17.)

On October 13, 2009, the UDC held a hearing to review the incident report. (*Id*. at 16.) After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id*.) Snider was advised of the DHO hearing, advised of his rights at that hearing, and provided with an advisement of rights form. (*Id*. at 19.)

On October 22, 2009, the DHO held a hearing. (*See id.* at 19-21.) Prior to the hearing, Snider was advised of his rights before the DHO and indicated he understood them. (*Id.* at 19.) He waived staff representation and witness testimony, but made the following statement: "I just couldn't go. I don't urinate very often per day." (*Id.*) In the hearing officer's decision dated October 22, 2009, finding that Snider had committed the act as charged, the DHO relied on documentary evidence such as the reporting officer's incident report and investigation, and the chain of custody form for the urinalysis testing list. (*Id.* at 20.) The DHO also noted the following:

> Upon questioning by the DHO, Snider denied the charge. He elaborated upon his plea by stating, "I just couldn't go. I don't urinate very often per day." The DHO did not find Snider's stated mitigating circumstance material in showing the charged act not committed. [The reporting officer] noted ample water provided to Snider during the in excess of 2 hour time frame in which he was allowed to provide a urine sample. Ultimately, one was not provided.

(*Id.*) Snider was sanctioned with disallowance of 40 days of good conduct time, 30 days of disciplinary segregation, 6 months loss of visitation, and 6 months loss of non-contact visitation. (*Id.*) The decision was delivered to Snider on October 30, 2009. (*Id.* at 21.)

Respondent provides that at the time of filing an answer to the instant petition, Snider had filed five (5) requests for administrative remedies, four (4) of which correspond to the issues raised in the instant petition. (*See* Doc. 7-2 at 7-14.) All of

his requests for administrative remedies and appeals therefrom were either rejected as untimely or for filing at the wrong level.  (*See id.*)

## II.     **Discussion**

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  28 C.F.R. § 541.15.  Because Snider was charged with Refusing to Provide a Urine Sample or to Take Part in Other Drug-Abuse Testing, an offense in the greatest severity category, the matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*.  28 C.F.R. § 541.13.  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

Further, despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241.  *Speight v. Minor*, 245 F. App'x 213, 215 (3d Cir. 2007); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).  Courts, however, have excused exhaustion when it would not promote these goals.  *See, e.g.*,

*Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner demonstrating futility); *Lyons v. United States Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with the prison grievance process set forth in the Code of Federal Regulations. *See* 28 C.F.R. § 542.10-.23; *Lindsay v. Williamson*, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *See Sharpe v. Costello*, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the response to the instant habeas petition, Respondent claims that the petition should be dismissed because Snider failed to complete the BOP's administrative remedy process prior to filing in this court. However, because the

court concludes that the instant petition is without merit, it need not determine whether to excuse Snider's failure to exhaust.

### A. Sufficiency of the Evidence

Snider contests the sufficiency of the evidence relied upon in finding him guilty of the Code 110 violation. (Doc. 1 at 9-10.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id.*

In the instant case, Snider alleges that the DHO did not consider evidence, namely that Snider has a problem urinating, in making his decision. (Doc. 1 at 9-10.) However, the record belies this assertion. The DHO specifically noted that he considered Snider's statement that he had problems urinating, but did not consider it "material in showing the charged act not committed." (Doc. 7-2 at 20.) The DHO did consider, however, the incident report and investigation, as well as the chain of

7

custody form for the urinalysis testing list. (*Id.*) In light of that evidence, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation and chain of custody form, all of which documented the incident, confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Snider's claim that there was insufficient evidence to support the DHO's decision.

### B. Notice and Record

Snider also claims that the BOP "abused its discretion by denying me a hearing." (Doc. 1 at 6.) Again, the record clearly belies this assertion. (*See* Doc. 7-2 at 16-21.) However, to the extent that Snider may be claiming that the DHO failed to make a record of the disciplinary hearing in violation of Snider's right to due process, that claim fails. Pursuant to the BOP's regulations,

> The Discipline Hearing Officer shall prepare a record of the proceedings which need not be verbatim. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed. The evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security. The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.

28 C.F.R. § 541.17(g). In the instant case, the DHO report served as the record of the disciplinary proceeding. That DHO report was delivered to Snider on October 30,

2009. (Doc. 7-2 at 21.) Thus, the petition will be denied with respect to Snider's claim that the DHO failed to make a record of the disciplinary proceeding.

### C. **Sanctions**

Snider also challenges the sanctions imposed by the DHO. (Doc. 1 at 6.) The sanctions that may be imposed upon a finding of guilt of a greatest category offense include, *inter alia*, forfeiting earned statutory good time, up to 60 days of disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. Snider is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Moreover, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, Snider's argument is without merit.

9

## III. **Conclusion**

For the above stated reasons, the petition for writ of habeas corpus will be denied.  An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated:  April 12, 2011.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL SNIDER,** : | **CIVIL NO. 1:CV-10-01667** |
| : | |
| Petitioner : | **(Judge Rambo)** |
| : | |
| v. : | |
| : | |
| **WILLIAM SCISM,** : | |
| : | |
| Respondent : | |

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                      s/Sylvia H. Rambo
                                   United States District Judge

Dated:  April 12, 2011.